NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No.  19-1731

_____

DELAWARE AND HUDSON RAILWAY COMPANY, INC.,
d/b/a Canadian Pacific Railway; SOO LINE RAILROAD COMPANY,
d/b/a Canadian Pacific Railway; CANADIAN PACIFIC RAILWAY LIMITED,
Appellants

v.

KNOEDLER MANUFACTURERS, INC.;
DURHAM INDUSTRIAL SALES, INC.

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 1-11-cv-00314)
District Judge: Honorable Barbara Jacobs Rothstein

_____

Argued:  November 13, 2019

Before: JORDAN, SCIRICA, and RENDELL, *Circuit Judges*

(Opinion Filed:  February 12, 2020)

Matthew J. Hammer
Daniel J. Mohan
Daley Mohan Groble
Suite 1600
55 West Monroe Street
Chicago, IL  60603

Gregory N. Longworth
Clark Hill
200 Ottawa Avenue, N.W.
Suite 500
Grand Rapids, MI 49503

Randall J. Pattee [ARGUED]
Alex L. Rubenstein
Fox Rothschild
222 South Ninth Street
Suite 2000
Minneapolis, MN 55402

*Counsel for Appellants*

Daniel R. Bentz, I [ARGUED]
Marks, O'Neill, O'Brien, Doherty & Kelly
707 Grant Street
2600 Gulf Tower
Pittsburgh, PA 15219

Matthew R. Planey
Crabbe, Brown & James
500 South Front Street
Suite 1200
Columbus, OH 43215

*Counsel for Appellee Knoedler Manufacturers Inc.*

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

This appeal involves claims for contribution and breach of contract made by railroad companies Delaware and Hudson Railway Company, Soo Line Railroad Company, and Canadian Pacific Railway Limited (collectively, "CP") against a seat manufacturer, Knoedler Manufacturers, Inc. After eight days of trial, the jury returned a verdict finding CP had not proven the elements necessary for its contribution claim but, inconsistent with that determination, also apportioned five percent fault to Knoedler. The jury found CP's contract claim was barred by the applicable statute of limitations and, even if not barred, that CP had not proven any breach. After the jury had been discharged, CP and Knoedler filed post-verdict motions focusing on the purported inconsistency in the jury's verdict on the contribution claim. The trial court molded the jury verdict in favor of Knoedler, eliminating the jury's five percent liability finding against Knoedler. CP appealed. For the reasons that follow, we will affirm.[1]

**I.**

CP is a Class I railroad operating in North America. Knoedler is a seat manufacturer. CP purchased locomotives from General Electric ("GE") beginning in 1995. At CP's request, GE contracted with Knoedler and installed Knoedler-manufactured seats in the locomotives. Between 2009 and 2011, four CP employees were

---

[1] The trial court possessed subject-matter jurisdiction under 28 U.S.C. § 1332(a)(3) because the amount in controversy exceeded $75,000 and the controversy was between citizens of different states and a foreign state. We exercise jurisdiction under 28 U.S.C. § 1291. *Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 184 n.9 (3d Cir. 2015).

injured when the Knoedler-manufactured seats failed. CP settled these employees' claims for approximately $2.7 million.

After settling its employees' claims, in 2011 CP sued Knoedler and Durham Industrial Sales, Inc., a maintenance company, for contribution[2] and breach of contract. CP settled with Durham before trial. The matter was eventually set for trial with the remaining parties. Over the course of about a month (before and during trial), the parties submitted several iterations of proposed jury instructions and jury verdict forms before eventually settling upon mutually acceptable versions. The verdict form began with four questions, all pertaining to the contribution claim:

> **Question No. 1**: Did Knoedler violate the Locomotive Inspection Act by providing seats which were (a) not in proper condition and safe to use in locomotives without unnecessary danger of personal injury and/or were (b) not securely mounted and braced?
>
> * * *
>
> **Question No. 2**: Did any violation of the Locomotive Inspection Act on the part of Knoedler cause, in whole or in part, no matter how small, the injuries sustained by Steven Alcorn, Thomas Holleran, John Slaughter, and Daniel Franklin while using Knoedler-manufactured seats?
>
> * * *
>
> **Question No. 3**: Did any violation of the Locomotive Inspection Act on the part of CP, GE or Durham cause, in whole or in part, no matter how small, the injuries sustained by Steven Alcorn, Thomas Holleran, John Slaughter, and Daniel Franklin while using Knoedler-manufactured seats?

---

[2] We previously held the contribution claim was not preempted by the Locomotive Inspection Act, 49 U.S.C. § 20701. *Del. & Hudson Ry. Co. v. Knoedler Mfrs., Inc.*, 781 F.3d 656, 662 (3d Cir. 2015). The LIA and its regulations "provide binding standards for the suppliers of locomotives and locomotive equipment, as well as for railroad companies." *Id.* at 659.

4

> **Question No. 4**: What percentages were Knoedler, CP, GE, and Durham at fault for the injuries sustained by CP's employees while using Knoedler-manufactured seats?

Joint App. 358. The jury answered "no" to Question Nos. 1 and 2 and "yes" to Question No. 3. And even though the jury found CP had not proven the two elements required of its contribution claim against Knoedler, the jury apportioned liability under Question No. 4 as follows: 5% to Knoedler, 25% to CP, 70% to GE, and 0% to Durham. Joint App. 382.

After the jury returned its verdict, the trial court asked counsel if they wished to review the verdict form. Counsel declined and the jury was dismissed. Neither counsel requested relief under Federal Rule of Civil Procedure 49, which controls relief from an inconsistent jury verdict. Shortly after the jury's dismissal, both parties moved for relief based on the jury's inconsistent verdict. In post-trial briefing, CP requested the trial court to order a new trial because the jury's verdict was irreconcilably inconsistent and Knoedler requested the trial court to mold the verdict in its favor because the jury found CP had not proven the elements of its contribution claim. The trial court denied CP's motion and granted Knoedler's motion. The trial court molded the verdict to conform with the jury's response to the Question Nos. 1 and 2 on the verdict sheet, and judgment was entered in Knoedler's favor on CP's contribution claim.

CP appealed and we are presented with three issues: (1) whether the trial court erred in categorizing the verdict as a general verdict with answers to written questions rather than as a special verdict; (2) whether the trial court erred in not finding, as a matter

of law, that a violation of the Locomotive Inspection Act ("LIA") caused injury here; and (3) whether the trial court erred by changing its ruling on the repair doctrine after CP had concluded its case-in-chief.

## II.

First, we will address the categorization of the verdict.[3] CP argues the trial court incorrectly categorized the verdict as a general verdict with answers to written questions. Knoedler disagrees. Our decision on this narrow issue affects whether CP may have waived the availability of relief because inconsistency objections must be made before a jury is discharged if the jury has returned a general verdict. We conclude the verdict is a general verdict with answers to written questions and that CP has waived its inconsistency challenge because no objection was made before the jury was discharged.

There are three types of verdicts contemplated by the Federal Rules of Civil Procedure: a general verdict, a general verdict with answers to written questions, and a special verdict. Fed. R. Civ. P. 49. The first type, a general verdict ,"is a 'verdict by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions.'" *Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 190 (3d Cir. 2015) (quoting *General Verdict*, *Black's Law Dictionary* (10th ed. 2014)) [hereinafter *Pollara*]. The second type, a general verdict with answers to written

---

[3] Our review of the categorization of the verdict is *de novo*. *See Paolella v. Browning-Ferris, Inc.*, 158 F.3d 183, 189 (3d Cir. 1998) ("We review the district court's denial of a motion for a new trial for abuse of discretion, 'unless the court's denial of the motion is based on the application of a legal precept, in which case the standard of review is plenary.'" (quoting *Rotondo v. Keene Corp.*, 956 F.2d 436, 438 (3d Cir. 1992))).

questions, "is a hybrid form in which the jury is asked to render a general verdict in conjunction with findings of fact. In other words, the jury is asked to decide mixed questions of law and fact, with the guidance of legal instructions." *Id.* (citations omitted). The third type, a special verdict, "is a form where the jury answers only 'special written finding[s] on each issue of fact.' . . . The jury's sole function is to determine the facts; the jury needs no instruction on the law because the court applies the law to the facts as found by the jury." *Id.* (quoting Fed. R. Civ. P. 49(a)(1)) (alteration in original).

To determine the type of verdict rendered, a court must consider "the totality of the district court's instructions" and "determin[e] whether the court instructed the jury, either verbally or in writing, to make a general finding for the plaintiff or the defendant, in addition to findings of actual or ultimate facts." *Simmons v. City of Phila.*, 947 F.2d 1042, 1058 (3d Cir. 1991) (citing *McLaughlin v. Fellows Gear Shaper Co.*, 786 F.2d 592, 595 n.2 (3d Cir. 1986); *Stanton v. Astra Pharm. Prods.*, 718 F.2d 553, 574–75 (3d Cir. 1983)). In other words, we must determine whether the instructions and the verdict sheet required the jury to make a finding on the ultimate question of liability.

This case turns on Question No. 4, which asked "[w]hat percentages were Knoedler, CP, GE and Durham *at fault* for the injuries sustained by CP's employees while using Knoedler-manufactured seats." Joint App. 382 (emphasis added). Implicit in the apportionment of fault (even accepting the contention that the percentages apportioned were findings of fact) is a *liability* finding, the ultimate question here. In other words, the jury *necessarily* decided the ultimate question of liability on the contribution claim in apportioning liability for it.

The jury instructions, in the final form agreed to by the parties and read to the jury, explicitly direct the jury to make a finding as to liability. The jury was instructed as follows: "In a civil action such as this, Plaintiff CP has the burden of proving every essential element of CP's claims by a preponderance of the evidence. If plaintiff CP should fail to establish any essential element of one of its claims by a preponderance of the evidence, *you should find for defendant Knoedler* as to that claim." Joint App. 333 (emphasis added). Moreover, the jury was given multiple conditional instructions. Instead of conditioning the jury's decision as to Question No. 4 on factual determinations, the instructions are conditioned on a finding of ultimate liability. *See* Joint App. 341 ("If you find that defendant Knoedler is *legally responsible* for proximately causing plaintiff's employee's injuries, you may consider whether Knoedler is responsible for all or a portion of the damages." (emphasis added)).

Considering the totality of the verdict sheet and the jury instructions, the jury was required to make a finding as to ultimate liability. The trial court correctly categorized the jury's verdict as a general verdict with answers to written questions. And because CP did not challenge the verdict's inconsistency before the jury was discharged, CP has waived any subsequent challenge as to inconsistency. *Pollara*, 784 F.3d at 191 ("[I]f a party fails to object to an inconsistency in a general verdict before the jury is excused, that party waives any objection in that regard.").[4] Accordingly, we will affirm the trial court's conclusion that this case presents a general verdict with answers to written questions and

---

[4] CP's counsel agreed that if we were to conclude the trial court correctly categorized the verdict, CP has waived any argument as to inconsistency.

we conclude that any inconsistency challenge has been waived by CP.

### III.

Two issues remain for us to resolve, neither of which were raised in the post-verdict motions in the trial court. Knoedler contends the remaining issues have not been preserved for appellate review. We conclude both issues have been adequately preserved for appellate review, because both pose only questions of law. *See Pollara*, 784 F.3d at 187 ("[I]f an earlier dispositive argument is not renewed . . . the litigant propounding the argument may not seek appellate review of a decision rejecting it, unless that argument presents a pure question of law that can be decided with reference only to undisputed facts.").[5] Accordingly, we will address each legal issue on the merits.

### A.

CP contends the trial court erred when it refused to instruct the jury as a matter of law that Knoedler had violated the LIA[6] and that its violation had caused injury.[7] Before

---

[5] To the extent presented, we will not address CP's contentions as to the sufficiency of the evidence because CP did not preserve that issue for appellate review. *See Charles Jacquin et Cie, Inc. v. Destileria Serralles, Inc.*, 921 F.2d 467, 475 (3d Cir. 1990) ("Where a party has failed to [renew its motion for judgment as a matter of law], we will not review the sufficiency of the evidence . . . ." (citations omitted)).

[6] CP contends Knoedler violated the LIA or its regulations by providing seats "not in a proper condition and safe to use in locomotives without unnecessary danger of personal injury" or seats that "were not securely mounted and braced." Appellant Br. 4 (citing 49 U.S.C. § 20701(1); 49 C.F.R. § 229.119(a)).

[7] We "review a denial of judgment as a matter of law *de novo*, viewing the evidence in the light most favorable to the prevailing party." *Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006) (citing *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005)).

trial, CP filed a motion *in limine* requesting the trial court to hold, as a matter of law, that Knoedler violated the LIA and the violation caused the injuries to CP's employees. The trial court deferred decision pending trial. Before charging the jury, the trial court once again considered whether to enter judgment as a matter of law on this issue. The trial court was inclined to grant CP's request, but Knoedler objected, arguing a factual dispute remained. Accordingly, the trial court denied CP's request and instead allowed the jury to decide the issue. The jury decided Knoedler did not violate the LIA.

It was not erroneous for the trial court to deny CP's request because there remained a factual disagreement that was properly decided by the jury. Knoedler agreed, by pretrial stipulation, that all four seats broke because the seat bases were fractured and these fractures led to the injuries of CP's employees. But Knoedler maintained then and maintains now that it "had no role in the installation, maintenance, or repair of the seats during the time period that the seat bases developed fractures and ultimately failed." Joint App. 91; *see also* Appellee Br. 26–29. In other words, Knoedler did not stipulate to its liability. Instead, the parties disagreed over when these fractures occurred and why. Accordingly, we will affirm the trial court.

## B.

CP also contends the trial court should have found, as a matter of law, that Pennsylvania's repair doctrine applied to CP's contract and warranty claims.[8] If the repair

---

[8] Pennsylvania's repair doctrine states that "the statute of limitations will be tolled only where 'evidence reveals that repairs were attempted; representations were made that the repairs would cure the defects; and the plaintiff relied upon such representations.'" *Keller v. Volkswagen of Am., Inc.*, 733 A.2d 642, 646 (Pa. Super. Ct. 1999) (quoting *Amodeo v.*

doctrine applied, the contract and warranty claims would not be barred by the statute of limitations. CP contends the undisputed facts show that after Knoedler was informed of the alleged defects in the chairs, Knoedler "continue[d] to participate in efforts to repair the seats." Appellant Br. 30.

CP moved for the trial court to enter a finding of fact that the repair doctrine applied to CP's contract and warranty claims. On the second day of trial, the trial court stated, based on the facts then presented, that there was "no way that eight reasonable people could find that the repair doctrine doesn't hold" and "[a]s a matter of law, given the facts I've heard, I don't think it's a factual question." Joint App. 433. As a result, the trial court indicated the repair doctrine would be applicable as a matter of law and that the contract and warranty claims would not be barred. After CP had closed its case-in-chief, the trial court revised its ruling, holding the issue of the applicability of the repair doctrine was a factual question that should be determined by the jury. CP did not ask the trial court to re-open its case-in-chief or present rebuttal on this topic. The question was presented to the jury at the end of trial. The jury determined there had been no breach committed by Knoedler and, even if there had been a breach, that the repair doctrine did not apply.

Knoedler argues, even assuming the trial court was incorrect, it was harmless error for the trial court to allow the jury to decide the repair doctrine's applicability. We agree. The jury found there was no breach of any contractual duty or warranty by Knoedler.

---

*Ryan Homes, Inc.*, 595 A.2d 1232, 1237 (Pa. Super. Ct. 1991)). This presents a question of fact. *Id.* (citing *Amodeo*, 595 A.2d at 1237).

Even assuming CP is correct that the statute of limitations did not bar its claims, the trial court's refusal to rule for CP on the repair doctrine as a matter of law is harmless error. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 931 (3d Cir. 1997) (concluding harmless error in a civil case requires only "a high probability that the error did not affect the outcome of the case"). CP's allegations that the jury was "hopelessly confused" or that "answers to special verdict questions . . . simply were not supported by the evidence" are conclusory. Appellant Br. 31. CP provides neither record citations, case law, nor reasoning to support this contention. Accordingly, because the trial court committed, at most, harmless error, we will affirm on this issue.

## IV.

For the reasons expressed, we will affirm the judgment rendered.