J-A06011-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TERI DALEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PENN STATE FOUNDATION | : | No. 853 WDA 2025 |
| SERVICES, LLC D/B/A "EVERDRY" | : | |
| v. | : | |
| | : | |
| | : | |
| WATERSTOPPERS D/B/A EVERDRY, | : | |
| CHARLES RESCHEL, EVERDRY | : | |
| MARKETING AND MANAGEMENT, | : | |
| INC. | | |

Appeal from the Order Entered July 2, 2025
In the Court of Common Pleas of Beaver County Civil Division at No(s):
10571-2024

BEFORE:  OLSON, J., MURRAY, J., and BECK, J.

MEMORANDUM BY OLSON, J.:                    **FILED: May 13, 2026**

Appellant, Teri Daley, appeals from an order entered July 2, 2025, granting summary judgment in favor of defendant Penn State Foundation Services, LLC d/b/a "Everdry" ("Penn State Foundation Services"), and additional defendants Waterstoppers d/b/a Everdry ("Waterstoppers"), Charles Reschel, and Everdry Marketing and Management, Inc. ("EMMI Holdings").  We affirm, in part, reverse, in part, and remand for proceedings consistent with this memorandum.

On February 1, 2018, Appellant entered into an agreement with Waterstoppers, the former owner of Everdry, for installation of a water management system in her residence in Aliquippa, Pennsylvania.[1] Immediately after Waterstoppers installed the water management system, Appellant noticed deficiencies. Appellant's Complaint, 4/9/24, at ¶ 6. Beginning on March 3, 2018, and cumulating on January 12, 2024, Appellant initiated multiple service calls to Waterstoppers, who responded by attempting to remediate leaks and address flooding conditions in Appellant's basement.

On April 9, 2024, Appellant instituted the instant action against Penn State Foundation Services, setting forth the following claims: violation of the Pennsylvania Home Unfair Trade Practices and Consumer Protection Law ("UTPCPL") predicated upon alleged violations of the Pennsylvania Home Improvement Consumer Protection Act ("HICPA");[2] breach of contract, breach of warranty, unjust enrichment, and negligence. On May 22, 2024, Penn State Foundation Services filed a complaint to join additional defendants, seeking to join EMMI Holdings, Waterstoppers, and Waterstoppers' owner, Charles

---

[1] EMMI Holdings purchased Waterstoppers on October 4, 2021, and Penn State Foundation Services subsequently purchased EMMI Holdings on April 1, 2022.

[2] As will be discussed more ***infra***, Appellant sought recovery by alleging that Penn State Foundation Services violated the following provisions of HICPA: 517.3(b), 517.7(a)(10), 517.7(a)(12), 517.9(6), and 517.9(10). ***See*** Appellant's Complaint, 4/9/24, at ¶ 13. Appellant further contended that, "in violating 517.3 (b), 517.7(a)(10), 517.7(a)(12), 517.9(6), and 517.9(10) of the HICPA, [Penn State Foundation Services] has additionally violated the UTPCPL." ***Id.*** In large part, each of the HICPA provisions cited in Appellant's complaint relate to discrete violations concerning the required content of home improvement contracts.

Reschel. After Penn State Foundation Services filed preliminary objections to Appellant's complaint, the trial court struck Appellant's negligence claim. The matter then proceeded to discovery.

On March 3, 2025, Penn State Foundation Services filed a motion for summary judgment, citing multiple grounds for relief. First, Penn State Foundation Services argued that the statute of limitations barred Appellant's claims for breach of contract, breach of warranty and unjust enrichment. Penn State Foundation Services also claimed that it could not be held liable under the UTPCPL. To support this claim, Penn State Foundation Services maintained that it neither drafted nor initially executed the service agreement with Appellant. Furthermore, Penn State Foundation Services explained that it secured its contractual rights through assignment, after it purchased Everdry and that assignees cannot be held liable under the UTPCPL. *See* Penn State Foundation Services' Brief in Support of its Motion for Summary Judgment, 3/3/25, at *7 (unpaginated) ("The UTPCPL does not impose liability against assignees for the conduct of another."), *citing* **Perkins v. Beltway Cap.**, LLC, 2013 WL 8697955, at *6 (Pa. Com. Pl. Apr. 16, 2013). Thereafter, on April 14, 2025, EMMI Holdings, Waterstoppers, and Mr. Reschel moved for summary judgment, echoing Penn State Foundation Services argument that Appellant's breach of contract, breach of warranty and unjust enrichment claims were time-barred. EMMI Holdings, Waterstoppers, and Mr. Reschel also contended that Appellant "failed to produce evidence of facts essential to

her claims under [the UTPCPL/HICPA]." Trial Court Opinion, 7/2/25, at 2. Appellant responded to both summary judgment motions on May 7, 2025.

On July 2, 2025, the trial court entered an order granting summary judgment in favor of Penn State Foundation Services, EMMI Holdings, Waterstoppers, and Mr. Reschel. This timely appeal followed.

On appeal, Appellant raises the following issues for our consideration.[3]

1. Whether the trial court committed an error of law or abused its discretion in [holding that Appellant's claims for breach of contract, breach of warranty and unjust enrichment were barred by the statute of limitations]?

2. Whether the trial court committed an error of law or abused its discretion in holding that deceptive servicing of a warranty after corporate succession does not support liability under the UTPCPL?

3. Whether the trial court committed an error of law or abused its discretion in permitting [Penn State Foundation Services, Waterstoppers, Mr. Reschel and Everdry] to rely on the existence of a written contract to preclude a claim for unjust enrichment?

Appellant's Brief at 14 (unnecessary capitalization omitted).

Initially, we note:

Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

_____

[3] We have combined and re-ordered Appellant's issues presented on appeal for ease of discussion and disposition.

The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Straw v. Fair*, 187 A.3d 966, 982 (Pa. Super. 2018) (quotation marks and citations omitted).

In her first issue, Appellant argues that the trial court erred in concluding that her claims for breach of contract, breach of warranty and unjust enrichment were barred by the statute of limitations. "The General Assembly has established that '[a]n action, proceeding or appeal, must be commenced within the time specified in or pursuant to the Judicial Code.'" *Ferraro v. Patterson-Erie Corporation*, 313 A.3d 987, 998 (Pa. 2024), *citing* 42 Pa.C.S.A. § 5501(a). In general, "a cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted." *Estate of Hogarty v. Jeffers Farms, Inc.*, 303 A.3d 482, 488 (Pa. Super. 2023) (citation omitted). "An injury is inflicted 'when . . . the corresponding right to institute a suit for damages arises.'" *Id.* (citation omitted). Pennsylvania law dictates that the complaints for breach of contract, breach of warranty, and unjust enrichment must be commenced within four years. *See* 42 Pa.C.S.A. § 5525(a).

Here, the trial court determined that each of the causes of actions herein are subject to a four-year statute of limitations period. *See* Trial Court Opinion, 7/2/25, at 5-6. The trial court then held that "the [aforementioned]

cause[s] of action accrued on March 3, 2018, when [Appellant] first acknowledged the deficiencies in the waterproofing system, which [gave rise to] the claims of breach of contract, breach of warranty and unjust enrichment." *Id.* at 6. Because Appellant did not initiate the instant action until April 9, 2024, more than six years after the trial court concluded her right to maintain suit arose, the trial court held that Appellant's claims were time-barred. *Id.*

After careful review, we conclude that the trial court erred as a matter of law in failing to consider genuine issues of material fact pertinent to the repair doctrine, a theory that may have tolled the limitations period in this case. In the property construction or renovation context, "where there [are] a series of [subsequent] repair attempts, this Court has invoked the repair doctrine to toll the statute of limitations." *Keller v. Volkswagen of America, Inc.*, 733 A.2d 642, 646 (Pa. Super. 1999). Indeed,

> [u]nder this doctrine, the statute of limitations will be tolled only where 'evidence reveals that repairs were attempted; representations were made that the repairs would cure the defects; and the plaintiff relied upon such representations.' [*Amodeo v. Ryan Homes, Inc.*, 595 A.2d 1232, 1237 (Pa. Super. 1991)].

*Keller*, 733 A.2d at 646. Importantly, "whether the statute of limitations is tolled under the repair doctrine is a question of fact." *Id.*

In Appellant's summary judgment response, she referenced evidence of at least five separate "water intrusions" at her residence which resulted in a subsequent "service call" to fix the pressing issue. Appellant's Brief in

Opposition to Summary Judgment, 5/7/25, at 3. More specifically, Appellant stated:

> On March 3, 2018, barely a month after installation, [Appellant] contacted the original contractor to address "a leaking sink and improperly mounted water lines," which required a service call. ([Appellant's Deposition, at] 17). Seven months later, she reported that "water was entering the basement under the back doorjamb," prompting a second service call on October 10, 2018. ([*Id.* at] 18). In March 2022, [Appellant] documented a backup of the sump pit and visible water leaking through the wall where the discharge pipe had been installed. ([*Id.* at] 22-23). She testified that "water was leaking through my wall where the pipe came in," and "[I] again requested service." ([*Id.* at] 45-47). In 2023, the pattern continued: clogged discharge lines, failing battery backups, and fresh pooling water across the basement floor, which she estimated reached "a few inches" during a full-floor event. ([*Id.* at] 47-57). Finally, on January 30, 2024, [Appellant] suffered what she described as "a massive flood . . . six or more inches wall to wall." ([*Id.* at] 64).

*Id.* at 3-4. Appellant also attached documentary evidence further detailing her "client account" activities pertaining to the aforementioned service calls. *See id.* at Exhibit 2. We are required to view this evidence in the light most favorable to Appellant, the non-moving party. By referencing several successive service calls initiated by Appellant and answered by Penn State Foundation Services, Appellant's response to the motion for summary judgment raised genuine issues of material fact as to repair attempts, representations concerning continued warranty coverage and resolution of construction defects, and detrimental reliance. Thus, it became the fact-finder's duty to resolve whether the four-year statute of limitations was

- 7 -

tolled pursuant to the repair doctrine.[4]  ***See Fine v. Checcio***, 870 A.2d 850, 862 (Pa. Super. 2005) (holding that summary judgment is inappropriate when there is a genuine issue of material fact of whether the statute of limitations was tolled).  We therefore reverse the trial court's order granting summary judgment on Appellant's breach of contract, breach of warranty and unjust enrichment claims.

In her second issue, Appellant argues that the trial court erred in concluding that Penn State Foundation Services' status as an assignee of the relevant contract with Appellant precluded liability under the UTPCPL and HICPA.  Hence, Appellant maintains that the trial court erred in citing this basis

---

[4] In its 1925(a) opinion, the trial court averred that Appellant failed to raise the repair doctrine before she filed her Rule 1925(b) concise statement and, as such, any claim on this basis was waived.  Trial Court Opinion, 8/29/25, at *1-*2 (unpaginated).  We agree with the trial court that Appellant failed to expressly and accurately discuss the legal authority pertaining to the repair doctrine in her brief opposing summary judgment.  Instead, Appellant essentially claimed that each of the various service calls entailed new contractual breaches that "support[ed] a renewed limitations period." Appellant's Brief in Opposition to Summary Judgment, 5/7/25, at 3.  Under Rule 1035.3 of the Pennsylvania Rules of Civil Procedure, however, a party opposing summary judgment must file a response identifying "one or more issues of **fact** arising from evidence in the record" or "evidence in the record establishing the **facts** essential to the cause of action or defense."  Pa.R.C.P. No. 1035.3(a)(1)-(2) (emphasis added).  Undoubtedly, Appellant's reference and inclusion of the various service calls made from 2018 through 2024 constitute evidence of facts essential to the repair doctrine.  Thus, even though Appellant's legal argument missed the mark, we conclude that her discussion sufficiently complied with Rule 1035(a)(1)-(2) and raised a genuine issue of material fact as to whether the repair doctrine tolled the statute of limitations for Appellant's claims of breach of contract, breach of warranty and unjust enrichment.

as grounds for entering summary judgment in favor of Penn State Foundation Services on her consumer protection claims. Appellant's claim fails.

In Count I of her complaint, Appellant sought recovery by alleging that Penn State Foundation Services violated the following provisions of HICPA: 517.3(b), 517.7(a)(10), 517.7(a)(12), 517.9(6), and 517.9(10). **See** Appellant's Complaint, 4/9/24, at ¶ 13. Appellant further contended that, "in violating 517.3 (b), 517.7(a)(10), 517.7(a)(12), 517.9(6), and 517.9(10) of the HICPA, [Penn State Foundation Services] has additionally violated the UTPCPL." **Id.** In large part, each of the HICPA provisions cited in Appellant's complaint concern the required content of home improvement contracts. **See generally** 73 P.S. § 517.7(a)(10) (requiring home improvement contracts to include "the names, addresses and telephone numbers of all subcontractors on the project known at the date of signing the contract."); **see also** 73 P.S. § 517.7(a)(12) (requiring home improvement contracts to include "the toll-free number" of the Pennsylvania Bureau of Consumer Protection). Appellant provided limited, if any, details regarding the alleged violations of the aforementioned HICPA provisions. **See** Appellant's Complaint, 4/9/24, at ¶¶ 14-16. In this same vein, Appellant did not allege, at any point in her complaint, that Penn State Foundation Services violated any deception-related provisions of the UTPCPL. Thereafter, Penn State Foundation Services filed a complaint to join additional defendants, EMMI Holdings, Waterstoppers, and Mr. Reschel, claiming that, if Appellant sustained the damages as alleged in the complaint, EMMI Holdings, Waterstoppers, and Mr. Reschel were solely

liable to Appellant or, in the alternative, jointly and severally liable with the original defendant, Penn State Foundation Services. Accordingly, Appellant's allegations against Penn State Foundation Services were also lodged against EMMI Holdings, Waterstoppers, and Mr. Reschel. *See* Pa.R.C.P. No. 1706.1.

As indicated above, Penn State Foundations Services filed its motion for summary judgment on March 3, 2025. With respect to Appellant's claims under the UTPCPL and HICPA, Penn State Foundation Services argued that, because it did not own Everdry at the time of the execution of the service contract and, as such, did not participate in contract negotiations, it could not be held liable under the UTPCPL. *See* Penn State Foundation Services' Motion for Summary Judgment, 3/3/25, at *6 (Penn State Foundation Services arguing that the "UTPCPL does not impose liability against assignees for the conduct of another."), *citing* **Perkins v. Beltway Cap., LLC**, 2013 WL 8697955, at *6 (Pa. Com. Pl. Apr. 16, 2013). EMMI Holdings, Waterstoppers, and Mr. Reschel subsequently filed a motion for summary judgment. In their motion, EMMI Holdings, Waterstoppers, and Mr. Reschel pointed out that, in her complaint against Penn State Foundation Services, Appellant "list[ed] several alleged violations of the [HICPA, which served as a basis for her claim under the UTPCPL]," but Appellant "failed to set forth evidence of the claimed violations." EMMI Holdings, Waterstoppers, and Mr. Reschel's Motion for Summary Judgment, 4/14/25, at 5 (noting that Appellant's complaint alleged that Penn State Foundation Services violated "Sections 517.3(b), 517.7(a)(10), 517.7(a)(12), 517.9(6), and 517.9(10) of HICPA" and, in so

doing, Appellant claimed that Penn State Foundations also violated the UTPCPL). EMMI Holdings, Waterstoppers, and Mr. Reschel then argued that the contract, as executed with Appellant, "demonstrates compliance with each of the sections cited by [Appellant]" and, therefore, no genuine issue of material fact existed relative to Appellant's claim under HICPA and the UTPCPL, rendering summary judgment appropriate. ***Id.***

Appellant later responded to the motions for summary judgment filed by original defendant Penn State Foundation Services and additional defendants EMMI Holdings, Waterstoppers, and Mr. Reschel. In her response, Appellant neither referred nor developed the factual basis supporting her allegations of noncompliance with the statutory provisions enumerated in her complaint against Penn State Foundation Services; instead, Appellant argued that the UTPCPL "prohibit[ed] deceptive conduct that create[d] a 'likelihood of confusion or misunderstanding.'" Appellant's Brief in Opposition to Summary Judgment, 5/7/25, at 6 (citation omitted). As indicated above, this contention did not appear Appellant's prior pleadings. Appellant then argued that her "unrefuted testimony establishe[d] that[,] after the business was sold and reconstituted as Penn State Foundation Services[,] the entity continued to perform system repairs and site visits at her home using the same name, branding, service teams, and representations as before." ***Id.*** Per Appellant, the question of whether Penn State Foundation Services' "conduct [gave] rise to consumer deception" constituted a credibility issue that must be decided by

a jury. *Id.* at 7. Appellant never specifically addressed the claims asserted by additional defendants EMMI Holdings, Waterstoppers, and Mr. Reschel.

The trial court, in deciding whether to grant summary judgment, initially agreed with Penn State Foundation Services' contention "there can be no assignee liability under the UTPCPL." Trial Court Opinion, 7/2/25, at 7. The trial court then addressed the claims raised by EMMI Holdings, Waterstoppers, and Mr. Reschel, which asserted that Appellant "failed to produce evidence essential to her claim under the [HICPA]." *Id.* The trial court noted that Appellant failed to respond to these claims in her responses to the defense motions for summary judgment. Upon review, therefore, the trial court determined that the "record [was] void of any facts supporting [Appellant's] allegations [that EMMI Holdings, Waterstoppers, and Mr. Reschel violated the aforementioned HICPA provisions]." *Id.* Accordingly, the trial court granted summary judgment in favor of Penn State Foundation Services, EMMI Holdings, Waterstoppers, and Mr. Reschel. *Id.*

We discern no abuse of discretion or error of law on the part of the trial court. In her complaint, Appellant sought to hold Penn State Foundation Services liable under the HICPA and UTPCPL based solely upon the alleged violations of Sections 517.3(b), 517.7(a)(10), 517.7(a)(12), 517.9(6), and 517.9(10) of HICPA. None of the cited provisions addressed deceptive business practices following the execution of a contract. Instead, as explained above, all of the provisions cited by Appellant focused upon the required content of a construction or renovation contract. Appellant did not, at any

point, allege in her complaint that Penn State Foundation Services violated HICPA or the UTPCPL by engaging in deceptive business practices subsequent to the execution of the contract. It is apparent, therefore, that in seeking to defeat the summary judgment motion filed by Penn State Foundation Services as to claims under HICPA or the UTPCPL, Appellant asserted a new theory of liability that did not support or relate to any of the allegations made in her complaint. This is impermissible. *See Dillon by Dillon v. Nat'l R.R. Corp. (AMTRAK)*, 497 A.2d 1336, 1340-1341 (Pa. Super. 1985) (explaining that the "factual issues" raised by the non-moving party in response to a motion for summary judgment "were irrelevant" because they were rooted in a "cause of action [that]had not been previously pled" and, in turn, constituted a "totally new theory of liability."). Moreover, it is also apparent that Appellant never came forward with facts to support the specific HICPA violations she raised in her complaint. Instead, Appellant appears to simply rely upon the allegations set forth in her complaint to raise a genuine issue of material fact. This, also, is impermissible. *See Cigna Corp. v. Exec. Risk Indem., Inc.*, 111 A.3d 204, 210 (Pa. Super. 2015) ("Where the non-moving party bears the burden of proof on an issue, [s]he may not merely rely on [her] pleadings or answers in order to survive summary judgment.") (citation omitted). Based upon the foregoing, we discern no abuse of discretion on the part of the trial court and therefore affirm the trial court's order granting summary judgment on Appellant's HICPA and UTPCPL claim.

In her final issue, Appellant contends that the trial court erred in granting summary judgment on her claim for unjust enrichment based upon the existence of a written contract. Appellant's Brief at 44. The trial court, however, did not issue such a ruling. Instead, the trial court's decision to grant summary judgment on Appellant's claim for unjust enrichment was rooted in its determination that the claim was time-barred. Because Appellant has secured relief on her contention that her unjust enrichment claim was not barred by the statute of limitations, we need not address Appellant's final claim.

Order affirmed in part, reversed in part, and case remanded for further proceedings. Applications to quash appeal denied. Jurisdiction relinquished.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

5/13/2026